RENDERED: MARCH 25, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0731-MR

ROYAL AUTO SALES, LLC[1]                                          APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
ACTION NO. 19-CI-002530


JUMANDA PRICE                                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND K. THOMPSON, JUDGES.

COMBS, JUDGE: This case involves a claim of a violation of Kentucky's

Consumer Protection Act. Royal Auto Sales, LLC (Royal), appeals the judgment

---

[1] In its notice of appeal, the Appellant designates itself as "Royal Auto Sales" and uses that same designation on its appellate brief. However, the Appellee names the same entity as "Royal Motor Sales," and the Appellant then switches and utilizes "Royal Motor Sales" on its reply brief. We shall follow the form of address listed in the notice of appeal and in the caption of the order of judgment of the Circuit Court. In this Opinion, we designate and refer to Appellant as "Royal Auto Sales" or simply "Royal." This confusion as to terminology will be addressed later in this Opinion.

of the Jefferson Circuit Court entered in favor of Jumanda Price (Price) following a bench trial. Royal Auto Sales argues that the circuit court erred by admitting hearsay testimony and drawing unsupported inferences from the evidence. It also contends that the trial court erred by concluding that Royal willfully engaged in an unfair or misleading act when it sold a used car to Price and by awarding punitive damages and attorney's fees. Having reviewed the applicable law and the entirety of the trial court record, we affirm the judgment.

The evidence introduced at trial -- without objection -- showed the following sequence of events. On April 25, 2017, Royal Auto Sales in Louisville sold Price a 2016 Nissan Altima. She entered into a retail installment sales contract requiring principal payment of $17,448.40 and a total payment, including interest, of $24,283.90.

A few months earlier, the Altima, originally part of Hertz Corporation's rental fleet, had been involved in a collision in Lexington, Kentucky. Following the crash, David Rose of Property Damage Appraisers, Inc., was hired by Hertz to assess the damage to the vehicle. Rose observed that the side curtain and seat airbags had deployed during the collision. He concluded that replacement was required for both driver-side doors, inner door frame, and front quarter-panel. He testified that a new airbag system (including airbags, modules, and sensors) would also have to be installed. He explained that used or reconditioned airbag

components are not installed in vehicles. According to Rose, the total cost to repair the car and make it safe to drive was $9,575.40. Rose's report was introduced into evidence. It included numerous photographs of the vehicle and an itemized account of fifty-two (52) needed repairs and estimated costs.

Salaheddin Kurdi, owner of Royal Auto Sales, acquired the damaged vehicle at auction. The Altima was in the condition as shown in Rose's photographs when Kurdi purchased it two weeks after the collision. Kurdi explained that he repaired the vehicle at a cost of $1,861.00. The repairs were itemized on trial exhibit P. These repairs did not include a cost for the replacement of the car's airbag system. Kurdi admitted that he did not disclose to Price that the vehicle had been in a collision or that any repairs had been made. He denied knowing that he had any disclosure obligations pursuant to the requirements of KRS[2] 186A.540. Kurdi, who is a convicted felon according to the record, falsely testified under oath that he replaced the Altima's airbags, but he indicated that he had not found the receipt for them or an invoice for the labor performed.

When the vehicle's warning system illuminated several months later to indicate a mechanical problem, Price took it to a local Nissan dealership for diagnostic testing. She learned that the vehicle needed $8,000.00 in repairs, and she was convinced that the vehicle was unsafe to drive. However, she was

---

[2] Kentucky Revised Statutes.

required to keep the car and to continue to make the installment payments because no dealership would accept the Altima on trade; the finance company warned her that her credit report would be adversely affected if she allowed the vehicle to be repossessed.

Price could not afford to make the necessary repairs to the vehicle. In her testimony, she indicated that when she purchased the vehicle, Price did not know that the airbags had been deployed; she did not know whether the airbags and airbag system had been properly replaced; she did not know that the vehicle had been repaired; and she would not have purchased the vehicle if she had known the extent of the damage that it sustained in the collision. Price is concerned for her safety and that of her passengers when she drives the car. The vehicle history report, introduced as a trial exhibit, showed that the vehicle had been designated a total loss following the wreck in Lexington.

In April 2019, Price filed a civil action against Royal Auto Sales. She alleged that Royal violated provisions of Kentucky's Consumer Protection Act.[3] After a period of discovery, a bench trial was conducted on March 19, 2021. The trial court entered its findings of fact, conclusions of law, and judgment against Royal Auto Sales on April 14, 2021.

---

[3] KRS Chapter 367.

The trial court found: that Royal Auto Sales breached its statutory duty to disclose to Price all the damage to the vehicle; that Price sustained substantial monetary damages; and that she was entitled to recover punitive damages. She was awarded nearly $35,000.00. Price submitted a bill of costs totaling $581.25 and filed a motion for attorney's fees. Royal filed a motion to alter, amend, or vacate, which the trial court denied. Attorney's fees were awarded in the amount of $22,725.00.

"Royal Auto Sales, LLC," filed a timely notice of appeal. In its notice of appeal, Royal Auto Sales asserted that "[t]his was a frivolous case, seeking to strong arm a small business man over a technicality."

In her brief to this Court, Price noted that Royal **Motor** Sales had consistently misidentified itself throughout the appellate proceedings. Price did not contend that the misidentification was sufficient cause to dismiss the appeal. Without comment, Royal Motor Sales corrected the error in the caption of its reply brief. Treating this correction as a concession by Royal Motor Sales that the error was merely clerical, we shall address the appeal on its merits. *See McBrearty v. Kentucky Community and Tech. College System*, 262 S.W.3d 205 (Ky. App. 2008); *Sparkman v. Consol Energy, Inc.*, 470 S.W.3d 321 (Ky. 2015); *Flick v. Estate of Wittich*, 396 S.W.3d 816 (Ky. 2013).

We will not set aside a judgment following a bench trial unless it is "clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR[4] 52.01. A finding of fact is not clearly erroneous where it is supported by substantial evidence, which is defined as evidence of sufficient probative value to induce conviction in the mind of a reasonable person. *Clay v. WesBanco Bank, Inc.*, 589 S.W.3d 550 (Ky. App. 2019) (citing *Gosney v. Glenn*, 163 S.W.3d 894 (Ky. App. 2005)). The trial court's conclusions of law are reviewed *de novo. Id.*

Royal first argues that the circuit court erred by admitting hearsay testimony at trial. However, as Price correctly notes, Royal has failed to include statements with reference to the record indicating how and when the alleged errors were preserved for appeal as required by the provisions of CR 76.12(4)(c)(v). Instead, it merely advises that "[t]he issue of hearsay testimony was continuously brought up throughout the trial." An appellant who seeks our review must ensure that its brief complies with our rules of appellate practice. *Commonwealth v. Roth*, 567 S.W.3d 591 (Ky. 2019). Despite Royal's failure to comply with the rules of appellate practice, we have considered its argument on the merits. Having reviewed the entirety of the bench trial, we conclude that Royal's assertion that "without the use of 'hearsay' testimony, there would be no case" is patently false.

---

[4] Kentucky Rules of Civil Procedure.

The trial court's findings of fact are amply supported by substantial, admissible evidence.

Royal next contends that the trial court erred by concluding that it engaged willfully in an unfair or misleading act when it sold the car to Price. Citing the decision of the Supreme Court of Kentucky in *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287 (Ky. 1991), it notes that Kentucky's Consumer Protection Act does not apply to the simply incompetent performance of contractual duties. Royal argues that the trial court "overstepped its judicial limits by making a guess" about the costs of replacing the vehicle's airbag system and contends that liability could be imposed only where the court found by clear and convincing evidence that it had perpetrated a fraud against Price. We disagree.

Kentucky's Consumer Protection Act provides a remedy for a consumer who becomes a purchaser of goods as a result of an unlawful trade act and who consequently suffers an ascertainable loss of money. The Act allows the consumer to sue the seller for damages. *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897 (Ky. 2008). The Act's provisions require some evidence of "unfair, false, misleading, or deceptive acts or practices[.]" KRS 367.170. Actual damages may be awarded where the purchaser suffers some damage as a result of the unlawful trade act. KRS 367.220(1). By enacting the Consumer Protection Act, the General Assembly created a statute which enjoys the broadest application in order to

give Kentucky consumers the broadest possible protection. *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819 (Ky. 1988).

The provisions of KRS 186A.540 impose a duty upon motor vehicle dealers to disclose all damages to a motor vehicle of which the dealer has direct knowledge and which result in repairs (for items other than wheels, tires, or glass) that exceed two thousand dollars ($2,000.00). The required disclosure must be in writing and requires the purchaser's signature acknowledging the disclosure of damages.

Salaheddin Kurdi of Royal Motor Sales conceded that he was fully aware of all the damages to the Nissan Altima purchased at auction, and he admitted that he never disclosed to Price that the car had been repaired. He admitted that the vehicle's airbag system had been deployed so as to require replacement. However, Kurdi denied knowing that he had an obligation to disclose repairs exceeding $2,000.00, explaining that he had been able to repair the vehicle for just $1,861.00. Notably, the itemized list of repairs made to the Altima did not include a cost for the replacement of the car's airbag system. Kurdi falsely claimed and testified that he had replaced the Altima's airbags, but he indicated that he had not found the receipt for them or an invoice for the labor performed.

From the evidence presented, the trial court found that if Kurdi had, in fact, replaced the car's airbag system as required, the total repairs would have

exceeded the $2,000.00 threshold of the disclosure statute. Therefore, the court found that Royal "manipulated the repair invoice to keep the stated repairs below the disclosure threshold in violation of the [Consumer Protection Act]." In the alternative, if Kurdi failed to install the replacement airbag system or replaced it with used components, he misrepresented to Price the safety of the Altima, thereby willfully violating the provisions of Kentucky's Consumer Protection Act.

The trial court found the testimony of Price and David Rose to be credible. It found Kurdi's testimony to be unreliable. From the evidence, it could reasonably infer that Royal had engaged in unfair, false, misleading, or deceptive trade practices causing Price to suffer an ascertainable loss. Evidence can be sufficient to find a violation of the provisions of the Consumer Protection Act even where it would not have supported a judgment based upon common law fraud. *See Craig & Bishop, Inc.*, 247 S.W.3d 897. In light of the broad protections provided to consumers by Kentucky's Consumer Protection Act, there is no basis to disturb the court's conclusion that liability was clearly established in this case.

Royal next argues that the trial court erred by awarding Price punitive damages because there was no evidence to prove that it acted negligently or that its negligence showed a reckless disregard for Price's life or safety. In the alternative, Royal argues that an intent to deceive or injure consumers must be shown before punitive damages can be assessed.

Kentucky's Consumer Protection Act recognizes expressly "a person's right to seek punitive damages where appropriate" for violations of its provisions. KRS 367.220. Conduct that gives rise to liability under its provisions requires proof of "intentional or grossly negligent conduct." *Capitol Cadillac Olds, Inc.*, 813 S.W.2d at 291. It requires proof of an "ascertainable loss of money or property . . . as a result of . . . [an unfair] method, act, or practice[.]" KRS 367.220(1). The provisions of KRS 411.184 authorize an award of punitive damages upon proof that the defendant acted with oppression, fraud, or malice. Neither statute requires a showing of a reckless disregard for life or safety.

The trial court found that Kurdi had been a used car dealership owner/operator for more than a decade. His testimony indicating that he was unaware of his obligation to disclose to prospective buyers any repairs totaling more than $2,000.00 was found by the court not to be credible as follows:

> The fact that significant expensive replacement
> components were left off the "Repair Cost Report,"
> which brings the total repair cost to just under the
> disclosure threshold, supports the Court's conclusion that
> Mr. Kurdi was aware of his duty and manipulated the
> Report to avoid having to comply with his duty. The
> Court finds these to be the type of reprehensible actions
> for which punitive damages are warranted.

Price showed at trial that Royal utilized an unfair act or deceitful practice against her and that the wrongful conduct caused her to suffer an undue hardship. An award of punitive damages is intended to serve as a deterrent to

-10-

prohibited conduct -- especially in consumer protection cases where the economic harm suffered can often be relatively small. *Craig*, *supra.* In order to be effective, the amount of a penalty must be significant. *Id.* The trial court's award of punitive damages is amply supported by the facts and law in this case.

Finally, Royal argues that the trial court erred by awarding attorney's fees. It contends that the award is "improper because the entire case was built on rank hearsay and unsupported suppositions." It asserts that the trial court should have determined that Price's claim was nothing more than a waste of judicial time and effort instead of finding -- as Royal Motor Sales frames it -- that she was "a poor innocent waif thrust into the foreboding jungle peopled by unscrupulous used car salesmen and their wily tricks." Royal Motor Sales asserts that its counsel should be awarded fees for defending the frivolous action.

Kentucky's Consumer Protection Act specifically authorizes an award of attorney's fees. KRS 367.220. Having concluded that the trial court's findings of fact were adequately supported by the evidence and that its conclusions of law were correct, we are not persuaded that Royal was entitled to sanctions against Price in the form of attorney's fees. We cannot refrain from noting that such a proposal is wholly ludicrous under the circumstances of this case. On the other hand, an award of attorney's fees to Price was entirely appropriate under the circumstances. Royal's argument to the contrary merits no further analysis.

The judgment of the Jefferson Circuit Court is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Michael R. Slaughter
Thomas Haile
Westport, Kentucky

BRIEF FOR APPELLEE:

James Craig
Louisville, Kentucky